Our first case will be Janice Quillin v. Tenet Health Systems, Philadelphia, Inc. et al. Mr. Woodrow. Thank you, Your Honor. Again, my name is James Woodrow from the law firm of Woodbrook and Troward. On behalf of the defendants' appellants in this case, Tenet Health System, Philadelphia, Inc., Tenet Healthcare Corporation, and Tenet Health System, Hamann, LLC. With me is Ms. Shawn Roy. Before I begin, I'd like to reserve four minutes for rebuttal, Your Honor. That request will be granted. And just for the sake of ease, I'm just going to refer to it as Tenet or Hanuman all through. Let's make this go a little quicker. But specifically, Your Honor, we shouldn't be here today. This case properly belongs in arbitration. And just by way of background, the selling facts are that Ms. Quillin was a nurse... Let me ask you a question before you get there. You say you shouldn't be here today. Do we have jurisdiction? Yes, you do have jurisdiction, Your Honor, under the Civil Arbitration Act, Section 16. I thought that the motion to compel arbitration was denied without prejudice. That's correct, Your Honor. And even though it was without prejudice, it counts as a denial under Section 16. And I think the Third Circuit's opinion, I think it's actually cited in the Bruce and the jurisdiction statement, basically say that a denial without prejudice equates to a denial that gives the Third Circuit jurisdiction. Okay. Now, just by way of background, Ms. Quillin was an ER nurse over at Hanuman Hospital. She worked for Hanuman on two separate and distinct occasions, from October 2006 to February 2008, and then again from December 2008 to November of 2009. What's significant about that is on both occasions, at the commencement of her employment, she signed an employee acknowledgment form. An employee acknowledgment form basically says, I understand I'm subject to tenants' policies and the like, and embedded in that form, contained in that form, was an agreement to arbitrate. And that agreement to arbitrate applies to all disputes arising out of the employment, et cetera, except for specific accepted claims that are present here. As a result of that, shortly after Ms. Quillin's second departure from Hanuman, she filed a claim seeking in the district court, seeking unpaid wages. As a result, eventually, the tenant got around and moved to compel arbitration, pursuant to the arbitration agreements that she had signed. After that was installed, the motion was fully briefed, denied the motion without prejudice, saying that there were certain issues that needed further development, even though the plaintiff agreed that they entered into the agreement. Let me just go back to my jurisdictional question, if I could. I thought you were talking about Sandvig. I think it is. Sandvig AB. That denial wasn't specifically without prejudice. It was a denial to permit discovery, but it wasn't specifically without prejudice. Well, I think that may be a form of a substance, Your Honor, because here the denial is the same. It's 60 days to complete discovery on these issues, these discrete issues that pertain to, theoretically, the unconscionable defenses. So you don't think there's any difference between what we have here and what that case held? No, I do not, Your Honor. Because a denial of a motion to compel arbitration in any form is still a denial. Okay. And the purpose we enter into arbitration agreements is to avoid litigation, and whether it's without prejudice or with, to engage in discovery in a court, obviously. Okay. You go ahead. Well, regardless, it basically jumps to the point, because Judge Brody denied the motion to compel without prejudice, saying that she had concerns about the unconscionability defenses raised by the plaintiff. There was no dispute that she had entered into the agreement, and there was no dispute that the claims subject in this case, at least now, are covered by this agreement. So the only thing that was left was the plaintiff's defense of unconscionability. And as the Court well knows, under Pennsylvania law, which everybody agrees applies, in order to find a contract unconscionable, you must demonstrate that it's both procedurally unconscionable, that is, the process by which you sign it somehow offends, and that it's substantively unconscionable, that is, that the agreement in some way is so unfair. So you need to show both prongs. And Judge Brody found that there were issues of fact related to the assertions of substantive unconscionability. Specifically, she found three. She said there was an issue as to whether the class action waiver contained in the agreement is substantively unconscionable. That's a dead letter in light of the concepcion. I think it's a dead letter in sight of this Court's non-presidential opinion, which is concepcion, as well as the fact that the agreement on its face doesn't contain a class action waiver. I mean, it's silent as to the availability of the plaintiff to bring anything other than an individual claim. Can we look at the other two? The other two have to do with, one, whether the agreement forces the plaintiff to waive statutory rights because it allegedly, according to the plaintiff, and Judge Brody said she couldn't resolve the ambiguity, as to whether if they succeed in arbitration or if the plaintiff succeeds in arbitration, she's entitled to recover her fees and costs. And it's because there's a statement in the FTP, the fair treatment process, which is the descriptive document of the arbitration agreement. There's a phrase in it that says the plaintiff is responsible for her own fees and costs. At the same time, it says that the arbitrator is authorized to award any remedy under any statute, and that by participating in the FTP, you do not forego any statutory rights. And if you could get a court of law, you could recover in the arbitration. So is that really just a procedural statement that at the beginning of the process, you need to know that you're going to be responsible for your attorney's fees, but as you proceed through the arbitration process, if the arbitrator rules in the employee's favor on any number of the claims that are enumerated or the unenumerated ones, and attorney's fees are, number one, recoverable, and then, number two, ordered by the arbitrator, you can, in that circumstance, as an employee proceeding under the arbitration agreement, recover. Is that the posture in which we should look at this? Correct, Your Honor. That's exactly what it says. I mean, there's a blanket statement that you're responsible, because if you're not under a fee-shifting provision, you are responsible. It just so happens that the FLSA is a fee-shifting statute, because if you win, you get reasonable fees. So if the plaintiff were to go on arbitration in this instance and win, while they remain responsible for their fees, they're entitled to recover them as an element of the claim. It looks like in 1983, part of it pays the fees, and then at the end of the case, where the provisional part, you get a lot. Yeah, and that's the case under the tax code. If you're entitled to legal fees under a statute under the tax code, you're still, I mean, that's where the 1099 goes to you as the individual that wins, because you pay the lawyer. So you're always responsible for your legal fees. The fact that you're entitled to being reimbursed for them is a separate matter. But what about our statement in Puleo that requires the court to determine unconscionability? Well, first of all, that's unconscionability that goes to the agreement to arbitrate. The fact of the matter is that this is not an unconscionability issue that goes to the agreement to arbitrate. In fact, I think if you take Puleo and apply it to the issues here, it resolves the case with arbitration. And Puleo makes it very clear that these sort of contracting the unity questions that don't go to the actual agreement to arbitrate are for the arbitrator in the first instance. And this is where, frankly, I think the district court committed the most error, if you will. You haven't cited it for this purpose, but what about Pacific Care? Excuse me? An earlier case by the Supreme Court. It was cited, but not for the purpose. Well, I think if you look at Puleo and specifically page 179 of the Puleo opinion, so that's 605F3rd179, it goes through the issues, which it means are procedural issues for the arbitrator in the first instance. And each instance raised in this case is addressed and resolved as a first matter for the arbitrator. So if we look at the Pacific Care case, Puleo cites that case and says that it had to do with whether travel damages were available under the agreement. And it says the court held that it fell on the arbitrator, not the court, to resolve the contractual ambiguity. So what happened here is the district court... Is that what we have here? That's exactly what we have here. I mean, the district court said, with respect to at least two of the issues, and then the statute of limitations, right, if you will, that there's a fear that you could run out the clock on claims because there's no express time limits in the FTP. Both of those are ambiguous, and the court phrased it that way. They said there's an issue with that because I don't know precisely what the contract means. If that's the case, because there's an arbitration agreement that everybody agrees was entered into, it's for the arbitrator to resolve that ambiguity in the first instance. Then it might go back to court. It ultimately could go back to court, and I think the district court person recognizes that there are instances where an agreement can go off to the arbitrator and come back to the court. It sounds like the essence of the argument is that there's just not much left. In light of the Supreme Court decisions, which have been pretty frequent in the last five or six years, there's not much left for courts to do when it comes to title IX of U.S. code except making that initial determination. Is there anything left besides that? Well, I don't think you need to go that far in this case, frankly, because it's a practical matter. In this case, Palaio resolves each of these alleged substantive unconscionability issues. If the court found that the language in the agreement was an express class action, or there was an express way of returning a cease, that would be a different issue, because then you would have to go through a bit of unconscionability analysis. But the fact of the matter is that that's not what the court found. The court says it doesn't know what the agreement precisely means. There's competing provisions, and I don't believe that to be the case on the full record. We've studied that fully. But the fact of the matter is that because the court said there's an MOU, an MOU is for the arbitrator. We need to be an arbitration. Thank you, Mr. McGill. Mr. Lynch? Good morning, Your Honors. And to the court, my name is Gary Lynch. I represent a chain of CUNY, the employee in this case. There have been many decisions by the Supreme Court on these topics in the last few years, but none of them have changed the standards for evaluating the savings clause in Section 2 and the contractual defenses that are potentially available in deciding whether or not agreement to arbitrate is invalid. There is a strong presumption in favor of enforcing agreements to arbitrate that you first have to have the agreement. You can't use the strong federal presumption in favor of enforcing agreements to arbitrate to create agreements to arbitrate. You first have to have the actual agreement. So I think what the appellant is trying to do here is use that strong title where it's clear that the Supreme Court couldn't have been clearer about it in the last several years. They're serious about wanting to enforce agreements to arbitrate, and there's a strong federal presumption in favor of that. But that doesn't change the standard of review when a court is tasked with the responsibility of evaluating whether or not there's a valid contract here or not, whether there's a valid agreement to arbitrate. I think in that context, and all the courts are clear about this, is that it's a Rule 56 standard. It's a summary judgment standard, essentially. And in that context, it doesn't have to be drawn in favor of the party opposing arbitration. You see that my appellant's brief is rife with statements along the lines of, the court should have credited that evidence my way. The court should have just applied the strong federal presumption when resolving this difference in the contract. So you're saying under the Rule 56 standard, the agreement's ambiguous. You can't just send this to arbitration because the agreement itself is susceptible to different interpretations. On the one allegation, on the one issue that you've been discussing with us this morning, having to do with the costs, if I can leave with my strongest argument, the strongest argument is there's no end to the process that's set forth in that arbitration agreement. There's no requirement that the company ever come to the table and sit down and arbitrate the issue. They're claiming that this is business as it is saying, once you get to step five, you win arbitration. You can never get to step five. There's no requirement that they ever respond in the first four steps. But here you did. What's that? Here, in this case, she got to step five. She didn't get to anywhere. We never invoked any of the FTP in this case. The point is, it's uncautionable because each of the steps have no time limit. It's hard to claim when they want to get to arbitration that the clock's running. Excuse me? I see. It's hard to claim that when a tenant wants to take this to arbitration that the clock is running arbitration. Well, my point is, the parties presumably have agreed to a provision and to a system to arbitrate these things outside of court. What I'm saying is, if my client was to invoke that process, as she probably should, she would never get to arbitration eventually. And the uncautionability here, just to be clear about this, has to be evaluated at the date that the contract is entered into. It can't be evaluated based upon all the circumstances that have occurred. But that's very speculative. I mean, had she invoked the process and gone through the process and then got stuck at step two or three or four, I mean, maybe you're in your case. And then they move to compel arbitration. And then you say, Judge, how can we compel arbitration when we're stuck at step three or step four? I understand what you're saying, Your Honor. But I think that it's inappropriate for the court to evaluate the issue in a hindsight fashion that way, what you would call a speculative fashion. The uncautionability issue has to be evaluated on the face of the document itself at the moment that the agreement was entered into. All right. What's your support for that? My support for that is PALEO, actually. And if I may, I'll cite my page from PALEO. And that's page 1986, which is 605-3-172. Don't ask me for any other cites. That's the only one I have today. But my point is, you have to realize that at the moment that the agreement was entered into. All right. Well, let's talk about that. How can you claim that your client's will was overboard when her bargaining power was so deficient in comparison to Tenet in light of the facts of this case where she voluntarily left Tenet's employ and then voluntarily rejoined Tenet? That was probably the first time she left. As I understand, she wasn't like she was first out of it. She just left for a better opportunity. Well, let's separate procedural uncautionability from substantive uncautionability. And the reason we're starting this issue with the timing problem is for substantive uncautionability purposes. What could be more overwhelming than an agreement that says that you cannot pursue your FLSA statutory rights until you complete a five-step process, but the way that the process is designed, you may never complete it. So we can effectively, as your employer, prevent you from ever pursuing your FLSA rights. That's what that agreement says. That's at that moment that it was edited to. That's the terms of the category. If we agree with that, then we would have to establish a principle of law that would render invalid every single employment contract that required some form of incremental or progressive discipline before the parties went to war and court or arbitration. I don't think so. You just have to have one that's response-based. One that has meaningful time limits for the other party to react to a complaint, to provide you a response. We don't even have a record, though, in this case, as to whether it's reasonable or not because we haven't even tried. Well, then you have the document itself. It doesn't provide for a time limitation. It's open-ended. It says as soon as possible. We'll get to step one as soon as possible. And you can't go to step two until we've solved step one. We'll get to step two as soon as possible. You can't go to step three until we get to step two. Right on down the line. So, theoretically, that part of the committee that has an issue on the Fair Labor Standards Act or any of the others, including statutory claims, can never pursue those claims. And then they all have their own statutory limitations, which are going to expire. So the indefiniteness of the agreement is your argument? I think that's my strongest argument. Frankly, I don't think the court needs any additional evidence on that. I think the district court wanted to see some evidence on what the history has been with other parties who've pursued that five-step process. But I think it can be violated right on its face. There's no time limit. It's so one-sided that it gives an employer the unilateral ability to preclude the pursuit of the claim forever. That, to me, is pretty overwhelming. I think that's almost the definition of substantive unconscionability. That, to me, is the best argument that I have. Do you concede your adversary makes the point that the class-action waiver issue is really nothing to pay any attention to? Do you concede that point, or are you pressing it? There's no question that the Concepcion decision certainly made clear that the contractual effects of the Vail Water Section 2 of the FAA are limitless. They have some restriction on them. I think that the restriction that Justice Scalia is trying to carve out pertains to defenses that are inherent in the agreement to arbitrate itself. In other words, he doesn't want states to be able to go around and circumvent the enforceability of the agreements to arbitrate by claiming unconscionability as a result of having to arbitrate. And he gives some pretty compelling examples, frankly, in his decision. Along the lines of you can't, for instance, say it's unconscionable to force me to arbitrate if I'm not going to have a jury. Well, of course you're not going to have a jury. That's what you just agreed not to do, right? You agreed to go to arbitration on that. That's his analysis in that case. And that clearly has some impact on what the district court may do once it gets the extrinsic evidence that it's looking for. And I believe that evidence in this case has to do with what exactly my client's ability or damages are. And then more importantly, the district court wanted a resolution of the attorney's fee cost issue because that has some impact on the class action labor. Why is it that ambiguity regarding the cost is an issue for the arbitrator? Because it's part of the arbitration agreement. It's not just having to do with the overall contract itself. This cuts to the arbitration agreement. The district court properly concluded that. This is part and parcel of the arbitration agreement itself. These costs that we're talking about are the cost to arbitrate. That's what's involved here. But isn't the rule that any ambiguities in the contract are for the arbitrator in the first instance? And that perhaps the arbitrator will then make a ruling on the merits of that ambiguity that puts him back in court. But nevertheless, that's for the arbitrator in the first instance. I don't believe so, Your Honor. Your Honor, I think the district court has the obligation when it's dealing with the validity of the arbitration agreement itself to make decisions like that. That's a gateway issue involving the affirmative or the contractual defenses that are available under Section 2. I think that that's what the Supreme Court said. I think that's what this court's previous decision in Plano said. And I think it's pretty clear at this point that you separate out the agreement to arbitrate and whether or not that's being challenged as unconscionable versus more of the loyalty tax on the contract itself. And I think if it requires some evaluation of ambiguity, like the district court here wanted to do, I think that's entirely appropriate for that limit of purpose. For that limit of purpose, you don't have to have the arbitrator get involved with it. The district court has to have the ability to analyze the unconscionability issue. It has to be able to resolve any issues. This is nothing different than the typical Rule 56 measure where the one part says I need additional evidence. I want to send an affidavit saying I need additional evidence. All the district court said was you're asking me to conclude as a matter of law that these claims are arbitrable, and that this contract is valid, more specifically. And we said, well, we think that we have enough evidence already for you to conclude that it is not, that they argue that this contract is unconscionable on its face. District court says I want additional evidence. There's nothing all that eventual about the decision below. I'll, of course, ask for some additional evidence. What's the evidence that you can contemplate on running the clock? Like I said, I didn't agree with that portion of her decision. I don't know that she needs any additional evidence on the history of what other employees have experienced when they've gone through this maze of seemingly endless deadlines or nonexistent deadlines, really. That is the evidence that the district court indicated it would like to see. Our argument would be you don't need to see that. This thing on its face, I think, is unconscionable in that regard. Why isn't the cost provision severable? The cost provision arguably could be severable, but I think we have to ultimately wait and see what the district court concludes are the ultimate items that make this unconscionable. Clearly, the other issue that I've been discussing, which is this endless time limitation or endless process that the unilateral ability of the defendant to never conclude it, that's not severable. That's part and parcel with the agreement to arbitrate. The meeting of the minds, to the extent that there was one, was a meeting of the minds for a five-step process. It was not to simply just get straight into arbitration. Is there anything in the FTP that would preclude your client or any employee from making a motion to compel arbitration within the one-year arbitration time limit? Suppose the clock was running in those steps. There's nothing to preclude that, is there? No, there's nothing to preclude that. They chose to do that. The reason the unconscionability argument is being raised is that this particular employee, what's important about the argument is, of course, they're not just shifting their procedural unconscionability. Not in a situation where this was the argument that this was forced upon her. So you're right in the abstract. If somebody wanted to go to arbitration, the FAA allows you to enforce that type of agreement. The premise of this argument that I'm making today is that this was forced upon her. Yes, but what you're saying is sort of the converse. You're saying, well, there's a risk that the clock's going to run. And my question would be, run on what? And your answer is going to be, well, run on my right to arbitration. My reply is, you have the right to move to compel it if you want to run to arbitration. Well, it doesn't just run on her right to arbitration. It runs ultimately on her right to pursue an FLSA action because to be sure about this, there's nothing about invoking it. You have the FL, what's your statute of limitations on the FLSA action? It's two years. Two years, all right. So you're actually longer than what the arbitration provision would allow you. Well, that's assuming that I'd be able to get a resolution of that, I suppose. But I mean, I understand what you're saying there. I mean, in the pleadings that are before the court, did you allege that? Allege what, Your Honor? That the potential for delay could deny you of your statutory rights to file an FLSA action. Yes, that's in our briefing. Until we file our consent to sue, our clients are not told. And the opposition has said, well, you've already done or filed your consent to sue, so they are told, so there's no problem. But once again, that violates the rule enunciated in Peleo that you look at the unconscionability at the moment that the contract was signed. That's what I understand what you're saying there. Does the court have any other questions? Wait one second. Please. If not, I would like to make one quick final point, and that has to do with this reference to the American rule. The American rule is a common law concept. You have to look at the context in which we're talking about these provisions. You don't usually embody common law concepts of who bears what cost in a contract. That's the problem with what they're saying about the cost. That's in the contract. That's not a promise. Normally, a fee-shifting provision, as any statutory provision that flies in the face of a common law doctrine, it trumps it. But here you've got the common law doctrine enunciated as a promise in an agreement, and then you have the fee-shifting provision enunciated in the same agreement. That's the conflict. That's the ambiguity that the district court seized upon. You can't get around it by sloughing off the wrong provision and saying, well, that's nothing other than the embodiment of the American rule of each side bearing its own cost. That's true, but it's not just out there in the abstract. It's actually in this document. It's in the contract itself, and that's important. And I think the district court did a very good job of fleshing that out. If the court doesn't have any other questions, that's all I have. Thank you. Thank you, Mr. Lynch. Mr. Boudreaux? I think just a few points. With respect to the running-of-the-clock issue, I think the problem with that argument in this instance on the facts is that the concern of which the plaintiff complains is not a concern in this case. That is, she filed her claim within the statutory periods her claim is told, et cetera. So all of the harm that she thinks will come to other plaintiffs has nothing to do with her and thus has no relevance as to whether she can be compelled to arbitrate. Isn't that argument undermined by the fact that she hasn't proceeded? Judge Hartman's question was, well, if you're in the process, then you're okay. You can rephrase it any way you choose. But here's what I don't understand. You get in the process. If there's no specificity with regard to the time in which a tenant has to respond or apply or engage, aren't they at risk throughout the process of having their intent, that is, getting their issue resolved, actually come to fruition? I think that's the issue. Well, and I think as a practical matter, you're right, but that's why claims proceed rather, you know, I mean, it's not as though there are no timelines in the FTP. There are guidelines. There's no hard and fast rules. By the 10th day, you must do this, et cetera. There are guidelines, but seven days, we'll do this. 14 days, we'll do that, et cetera, to move the claims along. And of course, tenant has an interest in resolving claims short of arbitration or litigation. And each step, is there a prescribed guideline time? I know that, I thought there was one or two steps that were indefinite. And that's, right, well, there's no firm guideline. You appeal on that within so many days, something will happen. But the fact of the matter is, this is a procedural hurdle. Do you concede that if your client is dragging its feet, that at the middle of step two, that the employee could move to compliant arbitration? Well, I think the employee could always file a demand for arbitration, whether they proceed with the steps or not. We can't stop the employee from doing that. The question is whether tenants… But wouldn't they be entitled to that, too? They may very well be. The question is, would tenant assert as a defense the failure to comply with the procedural prerequisite to arbitration? And then that goes to an arbitrator. And that goes to an arbitrator, and it's no different. In other words, the arbitrator will then decide, no, you know, 20 days isn't reasonable. We'll go back to step two where the arbitrator could conclude the tenant is dragging its feet. Let's get it on, and let's arbitrate this. Exactly. And that's no different than John Wiley and Sons, you know, with a Supreme Court decision involving the need to go through the grievance and arbitration procedures under a collective bargaining agreement before going to arbitration. It's the same. It's a procedural issue for the arbitrator under any circumstances. The only other point I want to hit on is the procedural unconscionability in this case. And I frankly don't think the court needs to reach it because the arguments as to why the district court heard on substance unconscionability are so strong, and since you need to prove both the failure of substance unconscionability, I think, resolves the case. But the thing about the procedural unconscionability aspect of this case, in your honor, hit on it, is that it's very difficult to prove a procedural unconscionability where you have voluntarily resigned your employment and then gone back to the same employer knowing that it was going to be part of your employment. So you voluntarily made a knowing choice. I'm going to go back. I know I'm going to be subject to this, yet it's somehow procedurally unconscionable. And what is, I think, troubling about the district court's order is the fact that it ordered discovery. It essentially gave plaintiff another bite. Let's remember it is the plaintiff's burden to prove procedural unconscionability and unconscionability. So any problem with procedural unconscionability is resolved or remedied by the fact that you have here, that she's been back a second time and had the opportunity to review the FTP before signing it? I think in this case that resolves it. There are other factors that can do it. Is it a take it or leave it document? Well, in a general context, it may be, but that in and of itself isn't sufficient to prove procedural unconscionability. But if it is take it or leave it, it wasn't here because she left it and she changed her mind and took it again. But I know I'm out of time, but I just have one quick point I want to make about this. It is the plaintiff's burden, and it's the plaintiff's burden in summary judgment. And the plaintiff didn't induce enough evidence. And so the judge would have to say, you didn't need your burden. So instead, I need more evidence. When, in fact, the judge should have been saying, you didn't need your burden. The court did not rule on that, did they? The court did not definitively rule and sent back, gave the plaintiff essentially a second bite of the apple. Well, there's no difference then under the old 56F to draw the analogy. It wasn't requested by them, but, you know, I think it's within the. There is a provision of 56 that would permit a judge to do that, but it's unusual, I think, and in the context of this case, it's precisely why there's an error. And arbitration should be compelled. All right. Thank you. Thank you very much. We thank both counsel for excellent argument. We'll briefcase. We'll take the matter under advisory.